26JE-CC00502

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, MISSOURI**

| | |
|---|---|
| MICHAELA BERKBIGLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      Cause No.: |
| | ) |
| CITY OF PEVELY, MISSOURI, | ) |
| | ) |
| JASON DRIEMEYER, | ) |
| in his individual capacity, | ) |
| | ) |
| and | ) |
| | ) |
| ASHTON COOKE, | ) |
| in his individual capacity, | ) |
| | ) |
| Defendants. | ) |

Serve all Defendants at:
401 Main St.
Pevely, MO 63070

## PETITION FOR DAMAGES

Plaintiff Michaela Berkbigler ("Plaintiff" or "Ms. Berkbigler"), by and through undersigned counsel, and for her Petition for Damages, states as follows herein.

## PARTIES AND VENUE

1. Defendant City of Pevely, Missouri (the "City") is a public entity situated in Jefferson County, Missouri.

2. Defendant Jason Driemeyer ("Driemeyer") is an official employed by the City as a supervisor within the Pevely Police Department and, in that capacity, conducted business and operations in Jefferson County at all relevant times herein.

1

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

3. Defendant Ashton Cooke ("Cooke") is an official employed by the City as a Human Resources representative and, in that capacity, conducted business and operations in Jefferson County at all relevant times herein.

4. Plaintiff is a citizen residing in Jefferson County, Missouri.

5. The City employed Plaintiff within Jefferson County, where it conducts operations and where the actions giving rise to the instant Petition took place.

6. Venue is therefore appropriate in Jefferson County, including pursuant to Rule 508.010.

7. This action is authorized and instituted pursuant to, inter alia, 42 U.S.C. § 1983, the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., and via Missouri common law.

8. Defendants Driemeyer and Cooke acted under color and authority of the state; at all times pertinent to the allegations of this Petition, Defendants Driemeyer and Cooke were Plaintiff's supervisors and were acting under color of state law.

9. Plaintiff was a public employee for purposes of all authority cited herein.

10. At times pertinent to the allegations of this Petition, Defendants were involved in depriving Plaintiff of her constitutional and statutory rights and discriminating, harassing, and retaliating against Plaintiff.

11. Plaintiff demands a trial by jury on all issues so triable in this case.

**FACTS COMMON TO ALL COUNTS**

**Overview of Plaintiff's Employment**

12. Plaintiff was hired by the City of Pevely on February 22, 2023 to work as a Dispatcher.

13. At all times, Plaintiff's performance met or exceeded reasonable expectations.

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

14.     Plaintiff is a very religious person and, during off-work hours, published TikTok and Spotify discussions about her religious journey.

15.     Plaintiff's religious activities violated no workplace policy, and she did not proselytize at work.

16.     Direct evidence, discussed infra, establishes that Plaintiff was discriminated against because of her religious beliefs.

**Plaintiff's Stroke and Medical Leave**

17.     On August 4, 2024, Ms. Berkbigler suffered a stroke at work.

18.     Work-related stress undoubtedly precipitated the stroke.

19.     In July of 2024, Ms. Berkbigler was approached by her supervisor, Jason Driemeyer, who falsely accused her of "being late 8 times in 6 weeks from the 3rd week of May to the first week of July."

20.     Ms. Berkbigler provided evidence to refute this claim—Paylocity showed only one instance of tardiness.

21.     Additionally, Ms. Berkbigler furnished text messages between her and Mr. Driemeyer where she had provided reasons for her lateness.

22.     This angered Mr. Driemeyer, who then accused her of violating the "15-minute rule."

23.     Ms. Berkbigler referred to policy documentation which stated that the 15-minute rule (arriving early) was optional.

24.     After this confrontation, a series of harassing emails from Mr. Driemeyer continued for several weeks.

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

25. Seeking assistance, Ms. Berkbigler approached the Chief of Police and was awaiting a meeting with him at the time of her stroke.

26. Following required medical leave, Plaintiff returned to work on September 9, 2024.

27. Plaintiff was a qualified individual with a disability at all times following her stroke, related to her rehabilitation.

28. Moreover, Plaintiff was wrongly perceived as suffering from psychological delusion by Defendants and correctly perceived as suffering from anxiety and depression, further establishing qualified status.

29. At all times, Plaintiff was able to perform her job, with or without accommodation.

**Harassment and Retaliation Following Return from Medical Leave**

30. Immediately upon her return from medical leave in September 2024, Plaintiff began to be harassed and singled out for unfair criticism regarding various attendance and performance issues.

31. Following her complaint to Human Resources, this culminated in a meeting arranged by Mr. Driemeyer and HR representative Ashton Cooke on March 24, 2025.

32. During this meeting, Ms. Berkbigler was presented with a write-up for being disrespectful and other issues, all of which are easily refuted and/or represent minor lapses tolerated with respect to other employees.

33. During the meeting, Mr. Driemeyer screamed and waved his arms, acting wildly inappropriately, while Plaintiff remained professional, although observably distressed.

4

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

34.     Plaintiff requested to take the remainder of the day as sick leave in order to avoid stress-related complications related to her post-stroke condition, for which she was still being treated by a neurologist.

35.     Mr. Driemeyer and Mr. Cooke stepped outside for an extended amount of time.

36.     Ms. Berkbigler sent a text asking to talk to both of them again to advise them of all her side effects, ranging from high blood pressure, high heart rate, uncontrolled crying, vision issues, speaking issues, and numbness in her right arm.

37.     These symptoms preceded her August 4, 2024 stroke, escalating her concern.

38.     Her request was simply ignored; instead, she would be berated about whether she had signed the meeting memorandum or not.

39.     When Driemeyer and Cooke returned, Plaintiff was told she could only leave if she used vacation time, and that a prior request to take a day to attend her son's tournament might be reconsidered.

40.     This compounded her stress and anxiety.

41.     After making an effort to return to work, Plaintiff texted Mr. Driemeyer that she needed to leave and have her shift covered.

42.     She indicated she would contact her medical providers to request intermittent FMLA leave (for that day only).

43.     She also asked about taking a day of sick leave for the mental health impact of Mr. Driemeyer's conduct, about which she was told, "I'm not sure talk to Ashton in the morning."

44.     Before leaving, Ms. Berkbigler scheduled an email be sent to HR the next morning regarding the misconduct and unfair accusations in the meeting, and her need for reasonable accommodations post-stroke.

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

**Involuntary Placement on Continuous FMLA Leave**

45.     The following day, March 25, 2025, Ms. Berkbigler was notified, via text, by another employee that she was being placed on continuous FMLA by Driemeyer and Cooke for a minimum of eight weeks.

46.     Plaintiff had not requested, nor did she plan to submit documentation for, continuous leave, and was taken aback.

47.     No formal notification of this involuntary, forced leave was made by Defendants to Plaintiff, but a message was sent to her co-workers advising them of her leave.

48.     From this point, Plaintiff began to receive notifications that Driemeyer was viewing her religious-themed social media.

49.     Meanwhile, her calls to Cooke and others were ignored.

50.     Ms. Berkbigler planned on reporting to her next shift unless told otherwise.

51.     Finally, Cooke emailed that her FMLA from 2024 had been reviewed and determined to be inadequate, requiring new fit for duty paperwork, despite the fact that she had been working for five months without issue.

52.     Adding insult to injury, her honesty, including about whether she had actually had a stroke, was questioned.

53.     Ms. Berkbigler then made a protected complaint, alleging violations of the FMLA, the ADA, and HIPAA (related to her co-worker seemingly knowing facts about her condition), and requesting grievance forms.

54.     In following days, she contended with being provided the wrong paperwork and procedural confusion, while continuing to miss work.

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

55. FMLA paperwork, including fitness for duty, was completed, emailed and returned as soon as possible, on April 1, 2025.

56. Calls, voicemails, and emails about her return to work were ignored until two hours before the start of her April 2 shift.

57. A similar pattern followed the next day.

**Illegal Psychological Examination Based on Religious Discrimination**

58. Ms. Berkbigler again engaged in protected activity, sending an email on April 3, 2025 stating that she would be filing complaints with appropriate agencies.

59. Suddenly, Defendants became responsive.

60. HR advised Ms. Berkbigler she needed a fitness for duty from a specified doctor and also a psychological evaluation.

61. At that time, Plaintiff reached out to the EEOC, correctly recognizing that psychological examinations may be required only when a specific, legitimate, work-related reason is shown, and that an examination must be narrowed to job-specific criteria and must be non-intrusive as to personal matters.

62. Defendants had zero basis for believing that Ms. Berkbigler was in any way a threat or dangerous, or that she was unable to perform her duties.

63. There was no legitimate reason for an exam.

64. Nevertheless, Ms. Berkbigler indicated she would comply, even though her provider had advised she was fit for duty.

65. She also requested paid administrative (non-FMLA) leave and specific and relevant details pertaining to the requested fit for duty and psychological evaluation.

66. This was ignored.

7

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

67.     The involuntary psychological exam was scheduled for April 16, 2025, with Dr. Paul Wang of Creve Coeur Counselling Associates.

68.     Dr. Wang informed her that her request that only her fitness for duty be reported, without further detail, could not be honored, and that she would be required to authorize the release of all notes and records.

69.     Plaintiff asked Dr. Wang why she was being required to submit to the exam.

70.     Dr. Wang said that Defendants had "advised they had looked at your social media, and because of your religious views, and that you believe you personally talk to God, they don't believe you are mentally fit for duty."

71.     Specific social media posts at issue were identified by Dr. Wang.

72.     Dr. Wang said he could not provide the given reasons for the exam in writing to Ms. Berkbigler but that they would be in his report.

73.     It was also made clear the exam would be all-encompassing, not narrow.

74.     Under threat of losing her job, Plaintiff complied and underwent the exam with a full release of information.

75.     She was not paid for mileage or time for her participation.

76.     Even this illegal exam was not enough for Defendants, who outrageously—while keeping Plaintiff from working—advised her that she would have to submit to yet another psychological exam and that she might have to bear the expense of it herself.

77.     Ms. Berkbigler advised that she would not submit to any such exam, particularly if she might have to pay for it.

78.     In the face of her imposed FMLA leave set to expire on May 23, 2025, her requests for return-to-work information and employment status were repeatedly ignored.

8

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

79.     During this time, Plaintiff made additional protected complaints of discrimination, including on the basis of religion and disability, and advised that she had retained counsel.

**Retaliatory and Discriminatory Termination**

80.     Finally, on June 10, 2025, Plaintiff was terminated, with no reason provided.

81.     Plaintiff's termination was motivated by her disability, her perceived disability, her religious beliefs, and her exercise of protected rights under the FMLA and the First Amendment.

82.     The purported reasons for Plaintiff's discipline and termination were not based in fact and were pretext for unlawful discrimination and retaliation.

83.     Plaintiff has suffered, and will continue to suffer, significant economic losses, psychological trauma, and other damages as a result of the actions of Defendants, including but not limited to lost wages, lost retirement and health benefits, damage to her reputation, emotional distress, physical disturbances, damage to her career trajectory and future earnings, loss of standing in the community, and various material benefits of her employment.

84.     Defendants acted knowingly and with malice and evil motive.

85.     Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendants for their reprehensible conduct and to deter others from acting in a similar manner.

86.     As a consequence of Defendants' actions as described herein, Plaintiff has lost, and continues to lose, wages and other financial incidents and benefits.

87.     As a consequence of Defendants' actions as described herein, Plaintiff has experienced severe emotional distress, embarrassment, and a loss of reputation.

88.     As a consequence of Defendants' actions as described herein, Plaintiff has incurred, and will continue to incur, attorney's fees, costs, and expenses.

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

## COUNT I - RETALIATION AND INTERFERENCE IN VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT, 29 U.S.C. § 2601 ET SEQ.

### (Against Defendant City of Pevely)

89. Plaintiff hereby incorporates by reference all preceding Paragraphs.

90. Plaintiff was a qualified individual with a disability following her stroke and was entitled to the protections of the FMLA.

91. Plaintiff properly exercised her rights under the FMLA, including requesting intermittent leave and providing medical documentation.

92. Defendants retaliated against Plaintiff for exercising her FMLA rights by involuntarily placing her on continuous FMLA leave, refusing to allow her to return to work, imposing onerous and medically unnecessary fitness-for-duty requirements, and ultimately terminating her employment.

93. Defendants interfered with Plaintiff's FMLA rights by preventing her from returning to work after she had been medically cleared, imposing unauthorized continuous FMLA leave, and creating procedural obstacles to her return.

94. Plaintiff's exercise of her FMLA rights was a substantial or motivating factor in Defendants' adverse employment actions, including her termination.

95. Alternatively, Plaintiff's exercise of her FMLA rights was a negative factor or contributing factor in Defendants' adverse employment actions, including her termination.

96. Alternatively, but for Plaintiff's exercise of her FMLA rights, Defendants would not have subjected Plaintiff to the adverse employment actions described herein, including her termination.

97. Defendants' actions were willful and violated the FMLA.

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

98.     As a result of Defendants' violations of the FMLA, Plaintiff has suffered damages, including lost wages, lost benefits, emotional distress, and other economic and non-economic harm.

WHEREFORE, Plaintiff respectfully requests judgment, pursuant to verdict by jury, in her favor in an amount that is fair and reasonable for actual damages, back pay, reinstatement, front pay, liquidated damages, emotional distress damages, interest on damages, for her attorney's costs and fees, and for such other and further relief to which the Court deems just and proper.

**COUNT II - VIOLATION OF THE FIRST AMENDMENT (FREE EXERCISE OF RELIGION) UNDER THE U.S. CONSTITUTION / 42 U.S.C. § 1983**

**(Against Defendants Driemeyer and Cooke)**

99.     Plaintiff hereby incorporates by reference all preceding Paragraphs.

100.    Defendants Driemeyer and Cooke are "persons" for purposes of Section 1983.

101.    The actions taken by individual Defendants Driemeyer and Cooke were taken in their individual capacities while acting under color of state law, were afforded to them by virtue of state law and made possible only because Defendants were clothed with the authority of state law.

102.    By the acts described above, and in violation of 42 U.S.C. § 1983 and the U.S. Constitution, Defendants, agents of the state, unlawfully deprived Plaintiff of her rights under the First Amendment of the U.S. Constitution by discriminating against her and terminating her specifically because of her religious expression and beliefs.

103.    Plaintiff's religious expression, including her TikTok and Spotify discussions about her religious journey and her personal relationship with God, is protected under the Free Exercise Clause of the First Amendment.

11

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

104.    Defendants targeted Plaintiff's religious speech and beliefs as the basis for requiring a psychological examination and ultimately terminating her employment.

105.    Dr. Wang explicitly told Plaintiff that Defendants "had looked at your social media, and because of your religious views, and that you believe you personally talk to God, they don't believe you are mentally fit for duty."

106.    This constitutes direct evidence that Defendants discriminated against Plaintiff based on her religious beliefs and exercise of religion.

107.    Defendants' conduct adversely affected Plaintiff's protected religious exercise and expression.

108.    A causal link exists between Plaintiff's religious beliefs and expression and adverse acts suffered by Plaintiff, including the requirement to undergo psychological examinations and termination of employment.

109.    But for Plaintiff's religious beliefs and expression, Defendants would not have subjected her to the adverse employment actions described herein, including the requirement to undergo psychological examinations and termination of employment.

110.    Defendants abused the power given to them by the state.

111.    The conduct of Defendants was outrageous and willfully undertaken with reckless disregard for Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests judgment, pursuant to verdict by jury, in her favor in an amount that is fair and reasonable for actual damages, back pay, front pay/reinstatement, punitive damages, emotional distress damages, interest on damages, for her attorney's costs and fees, and for such other and further relief to which the Court deems just and proper.

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

**COUNT III - VIOLATION OF THE FIRST AMENDMENT (RETALIATION FOR PROTECTED SPEECH AND PETITIONING) UNDER THE U.S. CONSTITUTION / 42 U.S.C. § 1983**

**(Against Defendants Driemeyer and Cooke)**

112. Plaintiff hereby incorporates by reference all preceding Paragraphs.

113. Defendants Driemeyer and Cooke are "persons" for purposes of Section 1983.

114. The actions taken by individual Defendants Driemeyer and Cooke were taken in their individual capacities while acting under color of state law.

115. Plaintiff engaged in protected activity under the First Amendment by complaining about discrimination, violations of her rights, and unlawful conduct by her employer.

116. Specifically, Plaintiff complained to Human Resources about harassment and discrimination, contacted the EEOC to report violations, and sent emails to Defendants stating that she would be filing complaints with appropriate agencies.

117. Plaintiff's complaints to her employer, to the EEOC, and threats to file additional agency complaints constitute speech on matters of public concern and the exercise of her right to petition the government for redress of grievances, both of which are protected by the First Amendment.

118. Defendants were aware of Plaintiff's protected speech and petitioning activity.

119. Following Plaintiff's protected activity, particularly her April 3, 2025 email stating she would file complaints with appropriate agencies, Defendants suddenly became responsive and subjected Plaintiff to adverse employment actions.

120. These adverse actions included requiring medically unnecessary psychological examinations, refusing to communicate with her regarding her return to work, imposing additional burdens and obstacles to her return, and ultimately terminating her employment.

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

121. A causal connection exists between Plaintiff's protected activity and the adverse employment actions taken against her, as demonstrated by the temporal proximity and the dramatic shift in Defendants' conduct following her April 3, 2025 communication.

122. Plaintiff's protected speech and petitioning activity was a substantial or motivating factor in Defendants' adverse employment actions, including her termination.

123. Defendants abused the power given to them by the state.

124. The conduct of Defendants was outrageous and willfully undertaken with reckless disregard for Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests judgment, pursuant to verdict by jury, in her favor in an amount that is fair and reasonable for actual damages, back pay, front pay/reinstatement, punitive damages, emotional distress damages, interest on damages, for her attorney's costs and fees, and for such other and further relief to which the Court deems just and proper.

## COUNT IV - VIOLATION OF THE FOURTEENTH AMENDMENT (EQUAL PROTECTION) UNDER THE U.S. CONSTITUTION / 42 U.S.C. § 1983

### (Against Defendants Driemeyer and Cooke)

125. Plaintiff hereby incorporates by reference all preceding Paragraphs.

126. Defendants Driemeyer and Cooke are "persons" for purposes of Section 1983.

127. The actions taken by individual Defendants Driemeyer and Cooke were taken in their individual capacities while acting under color of state law.

128. Section 1 of the Fourteenth Amendment provides, "No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

129. Plaintiff was deprived of her right to equal protection under the Fourteenth Amendment when Defendants discriminated against her on the basis of her religion.

130. Religion is a protected classification under the Equal Protection Clause of the Fourteenth Amendment.

131. Defendants treated Plaintiff differently than similarly situated employees who did not hold or express the religious beliefs that Plaintiff held and expressed.

132. Dr. Wang explicitly told Plaintiff that Defendants "had looked at your social media, and because of your religious views, and that you believe you personally talk to God, they don't believe you are mentally fit for duty."

133. This constitutes direct evidence that Defendants singled out Plaintiff for adverse treatment based on her membership in a protected class—individuals who hold and express particular religious beliefs.

134. Defendants required Plaintiff to undergo psychological examinations, involuntarily placed her on continuous FMLA leave, refused to allow her to return to work, and ultimately terminated her employment because of her religious beliefs.

135. No legitimate government interest justified Defendants' discriminatory treatment of Plaintiff.

136. Defendants' conduct was intentional and purposeful discrimination against Plaintiff based on her religion.

137. But for Plaintiff's religion, Defendants would not have subjected her to the adverse employment actions described herein, including her termination.

138. Defendants abused the power given to them by the state.

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

139.    The conduct of Defendants was outrageous and willfully undertaken with reckless disregard for Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests judgment, pursuant to verdict by jury, in her favor in an amount that is fair and reasonable for actual damages, back pay, front pay/reinstatement, punitive damages, emotional distress damages, interest on damages, for her attorney's costs and fees, and for such other and further relief to which the Court deems just and proper.

## COUNT V - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Against Defendants Driemeyer and Cooke)

140.    Plaintiff incorporates by reference all preceding Paragraphs.

141.    As set forth above, Defendants Driemeyer and Cooke, abusing their positions of power and authority, engaged in extreme and outrageous conduct that resulted in great emotional distress and psychological harm to Plaintiff's person.

142.    Defendants' insensitive and cruel conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.

143.    Defendants Driemeyer and Cooke's conduct was extreme and outrageous, including screaming and waving arms wildly during a disciplinary meeting, ignoring Plaintiff's requests for sick leave when she was experiencing stroke-related symptoms, involuntarily placing her on continuous FMLA leave without notification, requiring her to undergo psychological examinations based on her religious beliefs, and ignoring her repeated attempts to communicate about returning to work.

144.    Defendants Driemeyer and Cooke acted intentionally or recklessly.

Electronically Filed - Jefferson - May 13, 2026 - 03:01 PM

145.    Defendants Driemeyer and Cooke's conduct caused severe emotional distress in Plaintiff, to the point of manifesting as bodily harm, and said mental injury is medically diagnosable and significant.

WHEREFORE, Plaintiff respectfully requests judgment, pursuant to verdict by jury, in her favor in an amount that is fair and reasonable for actual damages, punitive damages, emotional distress damages, interest on damages, for her attorney's costs and fees, and for such other and further relief to which the Court deems just and proper.

Respectfully Submitted,

HKM EMPLOYMENT ATTORNEYS, LLP

*/s/ Jeffrey D. Hackney*
Jeffrey D. Hackney
Missouri Bar No. 53158
HKM Employment Attorneys, LLP
7382 Pershing Ave., Suite 1W
St. Louis, Missouri 63130
Telephone: 314-207-7135
E-Mail: jhackney@hkm.com

*Attorneys for Plaintiff Michaela Berkbigler*